# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOFOROS G. POLITIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-2988 |
| | § | |
| STELIOS GAVRIIL, | § | |
| DEMOSTHENES KONSTADINOU, | § | |
| DORA BAKOYANNI, AND | § | |
| THE CONSULATE OF GREECE | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

On September 10, 2007, Christoforos G. Politis was deported from the United States to his homeland of Greece. In this case, he sues Stelios Gavriil, the former consul of Greece in Houston, Texas; Demosthenes Konstadinou, the current Inspector General of the Foreign Affairs Ministry in Greece; Dora Bakoyanni, the Greek Minister of Foreign Affairs, and the Consulate of Greece. Politis alleges that they caused his prolonged detention in United States immigration custody before his deportation. He asserts that this court has jurisdiction "pursuant to 28 USC 1331, and 28 USC 1391, and because whatever is alleged in the complaint happen in Houston Texas." (Docket Entry No. 1).

A review of Politis's *pro se, in forma pauperis* complaint reveals that it must be dismissed. Although 28 U.S.C. § 1351 gives district courts jurisdiction over civil suits against consuls of foreign states, the former consul, Gavriil, is entitled to consular immunity, and this court lacks subject-matter jurisdiction over the claims against Konstadinou,

Bakoyanni, and the Consulate of Greece. The reasons for the dismissal are set out in detail below.

## I.     Background

Politis came to the United States in 1985. In 2001, he was convicted of cocaine possession in a Houston, Texas state court. In this suit, Politis alleges that he was innocent and that consulate officials denied requests to investigate his allegedly wrongful imprisonment. On September 2, 2003, Politis received a letter informing him that the Consul had reviewed the transcripts of his trial in the Texas court. The letter stated that because the police found cocaine on Politis when he was arrested, the Greek Consulate could not help him. While serving his prison sentence, Politis informed the consulate that he wanted to renounce his Greek citizenship.

On June 29, 2004, Politis was discharged from Texas state prison and immediately taken into United States immigration custody pending execution of a 2001 removal order. While Politis was in immigration custody, he sent the Greek Consulate in Houston, Texas another request to renounce his Greek citizenship. In December 2004, Politis received an application from the consulate to renounce his citizenship. He asserts that he did not know that if he renounced his citizenship, he could not return to Greece. (Docket Entry No. 1, at 2).

Politis signed and returned the application to renounce his citizenship. On January 20, 2005, Immigration and Customs Enforcement (ICE) issued a Final Administrative Removal Order based on the finding that Politis was an alien who had been convicted of an

aggravated felony. Because Politis was deportable under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227, he was ordered removed from the United States to Greece or to any alternate country prescribed by Section 241 of the Act.

On March 18, 2005, Stelios Gavriil sent United States immigration authorities a letter informing them that Politis no longer had strong ties to Greece. Politis had been living and working in the United States for 20 years, was married to a lawful permanent resident, and had a five-year old son who was a United States citizen. Gavriil informed the United States authorities that Politis had asked to renounce his Greek citizenship and that "[n]either present, nor future ties between Mr. Politis and the Hellenic Republic exist." (Docket Entry No. 1, Ex. 3).

In June 2005, Politis asked the Greek Consulate to grant him a travel document that would allow him to be released from ICE custody and returned to Greece under the January 2005 removal order. On July 5, 2005, Gavriil sent Politis a letter reminding him that he had signed an application to renounce his Greek citizenship. The letter stated that Politis's application "was being treated and, therefore, we are no longer in a position to grant you a travel document for traveling to Greece." (Docket Entry No. 1, Ex. 4). The consul strongly urged Politis to comply with the decisions, rules, and regulations of the State of Texas and the United States. (*Id.*).

Although Politis was still subject to deportation, ICE released him to a period of supervision on November 30, 2005. While still in immigration custody, Politis had filed an action in federal district court against officials from ICE and the Department of Homeland

Security (DHS).  In this suit, *Politis v. Chertoff, et al*, No. Civ. A. H-05-3229 (S.D. Tex. 2005), he alleged that these officials violated his civil and constitutional rights because after they discovered he was no longer a citizen of any nation and not subject to deportation to Greece, they detained him beyond a lawful period.

On August 22, 2006, Politis was indicted under 8 U.S.C. § 1253 for failing to cooperate in his deportation proceedings.  On December 11, 2006, the indictment was dismissed, without prejudice, on the government's motion.  The court presiding over Politis's civil lawsuit granted the defendants' motion for summary judgment and entered final judgment on March 10, 2008.

On December 27, 2006, Gavriil again sent a letter to ICE and DHS to certify that Politis no longer had strong bonds with Greece.  The letter also stated that Politis had asked to renounce his Greek citizenship.  On January 3, 2007, an immigration judge with the Executive Office for Immigration Review (EOIR) ordered that the removal proceedings against Politis be dismissed without prejudice.  The 2005 removal order was cancelled on January 12, 2007 under 8 C.F.R. § 239.2.  The record is unclear, but it appears that a new removal order issued on January 16, 2007.  Politis sent the Greek Consulate a letter on January 19, 2007, asking for travel documents for Greece.  On March 20, 2007, Gavriil sent Politis a letter stating that the Consulate was "unable to process your request and [we] remind you that, in the past, you demanded and signed an application renouncing your Greek citizenship.  At this point we are no longer in a position to grant you a travel document for traveling to Greece." (Docket Entry No. 1, Ex. 6).

Politis asserts that as of June 2007, he was still a Greek citizen because the Greek Consulate in Houston, Texas had not processed his request to renounce his citizenship. In June 2007, ICE officials took Politis to the Greek Consulate. According to Politis, Gavriil asked him either to sign a new application to renounce his citizenship or to sign the travel document so that Politis could be deported to Greece. Politis contends that Gavriil asked him to commit a felony by signing the application to renounce Greek citizenship, because 8 U.S.C. § 1253 prohibits an alien subject to a removal order from taking action designed to prevent or hamper the alien's departure.

Politis's travel document was eventually signed. He was deported to Greece on September 10, 2007.

## II.     The Legal Standard

Politis is proceeding *pro se* and *in forma pauperis*. Courts apply "less stringent standards to parties proceeding *pro se* than to parties represented by counsel and liberally construe the briefs of *pro se* litigants." *Sanders v. Barnhart*, 105 Fed. Appx. 535, 536 (5th Cir. 2004) (citing *Grant v. Cuellari*, 59 F.3d 523, 524 (5th Cir. 1995); *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993)).

A court must determine whether it has subject matter jurisdiction and may raise the issue on its own. *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovsky*, 242 F.3d 322, 324 (5th Cir. 2001); *see also McDonal v. Abbott Labs*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("federal court may raise subject-matter jurisdiction sua sponte" ); *Gaar v. Quirk*, 86 F.3d 451, 453 (5th Cir. 1996) (courts have the duty to raise the issue of jurisdiction sua sponte);

FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). And because Politis is proceeding *in forma pauperis*, his complaint is subject to screening under 28 U.S.C. § 1915. Under § 1915(e)(2)(B), the court may dismiss any part of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *Id.*[1]

## III.   Analysis

### A.   Defendant Gavriil is Immune From Suit

Politis contends that "if the defendant Gavriil did his job or kind of his job plaintiff will not suffer long deprivation of his liberty, and other loses." (Docket Entry No. 1, at 4). Politis faults Gavriil for failing to process the application to renounce his Greek citizenship and failing to sign the travel document while Politis was in ICE custody. Politis asserts that "he would not be in custody/incarcerated for the twenty-eight (28) months that he was in custody because the defendant did not do his job like he suppose to do." (*Id.*).

Politis contends that Gavriil's letters to the United States immigration authorities led

---

[1] Politis has filed multiple lawsuits in this court, *in forma pauperis*. *See Politis v. Dyer*, Civ. A No. H-04-2849 (S.D. Tex. 2004); *Politis v. Adams, et al*, Civ. A. No. H-05-1223 (S.D. Tex. 2005); *Politis v. Dep't of Homeland Security*, Civ. A. No. H-05-2535 (S.D. Tex. 2005); *Politis v. Escamilla*, Civ. A. No. H-05-3191 (S.D. Tex. 2005); *Politis v. Chertoff, et al*, Civ. A. No. H-05-3229 (S.D. Tex. 2005); *Politis v. Chertoff et al*, Civ. A. No. H-05-2654 (S.D. Tex. 2005); *Politis v. Bureau of Prisons*, Civ. A. No. H-06-4054 (S.D. Tex. 2006); *Politis v. Chertoff, et al*, Civ. A. No. H-07-1954 (S.D. Tex. 2007); *Politis v. Kowis*, Civ. A. No. H-07-0594 (S.D. Tex. 2007); *Politis v. Chertoff, et al*, Civ. A. No. H-07-0525 (S.D. Tex. 2007); *Politis v. Noblin, et al*, Civ. A. No. H-08-2595 (S.D. Tex. 2008); *Politis v. Dep't of Homeland Security*, Civ. A. No. H-08-2207 (S.D. Tex. 2007).

them to believe that Politis could not be deported to Greece because the Greek government would not accept him there. Politis argues that once an application to renounce citizenship is processed, an individual becomes stateless and is not subject to deportation. He relies on *Clark v. Martinez*, 543 U.S. 371, 378 (2005), for the proposition that illegal aliens in custody because their homelands will not accept them must be released, even if they are convicted felons.

Under the statute, if an alien is ordered removed, the Secretary of Homeland Security "shall remove the alien from the United States within a period of 90 days," 8 U.S.C. § 1231(a)(1)(A). An alien who falls into a specific category "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision." 8 U.S.C. § 1231(a)(6). In *Clark*, the court held that there is a presumptively reasonable period of six months during which an alien may be detained pending removal. "[A]fter that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'" 543 U.S. at 378 (quoting *Zadvydas v. Davis*, 533 U.S. 678 (2001)). Politis argues that if Gavriil had processed Politis's application to renounce his Greek citizenship, ICE would have released him no more than six months after the January 2005 removal order.[2] Politis also argues that if Gavriil had signed the travel

---

[2] Even if Politis's complaint was not barred by consular immunity, this allegation fails to state a plausible claim against Gavriil. Gavriil's alleged failure to process Politis's application to renounce his Greek citizenship was not the cause of Politis's prolonged detention. The decision to release Politis after six months, if there was "no significant likelihood of removal in the reasonably foreseeable future," belonged to the immigration authorities. Gavriil informed the authorities that Politis had renounced his Greek citizenship, making it more likely that Politis would be released from custody under the standard set forth

document as Politis asked while he was in ICE custody, he would have been released within 45 days to return to Greece. The 45 days apparently refers to the amount of time required for Greek officials to provide the necessary documents to deport an individual from the United States to Greece.

Politis contends that Gavriil's action and/or inaction unnecessarily prolonged his detention in immigration custody. He seeks actual damages for the loss of his business in Houston – G&I Amusement Games – of $150,000, exemplary damages of $50,000, mental anguish damages of $5 million, and punitive damages of $1 million.

Under 28 U.S.C. § 1351, "[t]he district court shall have original jurisdiction, exclusive of the courts of the States, of all civil actions and proceedings against (1) consuls or vice consuls of foreign states." Jurisdiction under Section 1351 may be limited by treaty. *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1515 (9th Cir. 1987). The Vienna Convention on Consular Relations governs questions of consular immunity and as such limits jurisdiction under Section 1351. *Id.* Under Article 43 of the Vienna Convention, consular officials are subject to the jurisdiction of the receiving state except "in respect of acts performed in the exercise of consular functions." 21 U.S.T. 104. Article 5 of the Vienna Convention defines the term "consular function." Articles 5(a)-5(1) list twelve specific consular functions, including "issuing passports and travel documents to nationals of the

---

in *Clark* because it was unlikely he could be deported to Greece. ICE knew that Politis had requested to renounce his Greek citizenship, and it would elevate form over substance to say that Gavriil's failure to process the application made a difference in the decision-making of U.S. immigration authorities.

sending State" and "helping and assisting nationals, both individuals and bodies corporate, of the sending State." Article 5(m), a "catch-all" provision, defines "consular function" to include "any other functions entrusted to a consular post by the sending State which are not prohibited by the laws and regulations of the receiving State." 21 U.S.T. 82-85.

When consular officials are performing consular functions, they are immune from suit in the United States under the Vienna Convention. *See, e.g., Gerritsen v. Consulado General de Mexico*, 989 F.2d 340, 346 (9th Cir. 1993) (holding that Mexican consular officers who allegedly threatened a protester and subjected him to a "citizen's arrest" were entitled to immunity under the Vienna Convention, because the officials acted to protect "the dignity and premises of the Consulate"); *Risk v. Halvorsen*, 936 F.2d 393, 397-98 (9th Cir. 1991) (holding that Norwegian consular officials who assisted a Norwegian national in returning to Norway with her children in violation of a state-court order were immune from suit under the Vienna Convention, because the officials' aid was a discretionary consular function); *Berdakin v. Consulado de la Republica de El Salvador*, 912 F. Supp. 458, 467-68 (C.D. Cal. 1995) (holding that an El Salvadoran consul was entitled to consular immunity because he exercised consular functions); *Koeppel & Koeppel v. Federal Republic of Nigeria*, 704 F. Supp. 521, 524 (S.D.N.Y. 1989) (holding that a Nigerian consul was immune from suit for providing refuge to a Nigerian national who allegedly started a fire, because the consul's action was a "consular function" as described in the Vienna Convention). *Cf. Joseph v. Consulate General of Nigeria*, 830 F.2d 1018, 1027-28 (9th Cir. 1987) (holding that an employee of the Nigerian consulate was not protected by consular immunity for conversion,

trespass, and waste to a leased residence, because the employee's actions were not "consular functions" as described in the Vienna Convention); *Gerritsen*, 819 F.2d at 1516 (holding that wrongful acts, including kidnapping and assault, allegedly committed by Mexican consular officials to suppress criticism of Mexico within the United States were not "consular functions" providing immunity from suit under the Vienna Convention).

Even when liberally construed in accordance with Politis's *pro se* status, the complaint does not allege any actions by Gavriil that are not consular functions. The acts complained of – writing letters to U.S. immigration officials and failing to grant requests for travel documents – all fall squarely within the consular functions defined by the Vienna Convention. Gavriil is immune from suit under the Vienna Convention on Consular Relations. Politis's complaint against Gavriil is dismissed under 28 U.S.C. § 1915(e)(2)(b).

### B. This Court Lacks Subject-Matter Jurisdiction Over the Claims Against Konstadinou, Bakoyanni, and the Greek Consulate

Federal courts are courts of limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 915 (5th Cir. 2001). There are two possible sources of federal jurisdiction for a district court: federal question jurisdiction, for cases arising under the Constitution or federal law, and cases involving diversity of citizenship. 28 U.S.C. §§ 1331, 1332. A district court may dismiss a case for want of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

Politis alleges that Konstadinou, the Inspector General of the Greek Ministry of

10

Foreign Affairs, failed to do his job and took "sides with the consul and protect him by decide in plaintiff's complaint based on consul's side story only." (Docket Entry No. 1, at 5). Politis contends that Konstadinou erred in concluding that the consul's actions had nothing to do with the United States immigration authorities keeping Politis in custody. According to Politis, he would have been released from ICE custody before November 30, 2005 if the consul had processed his application to renounce Greek citizenship or signed the travel document to allow his return to Greece. Politis asserts that "Konstadinou is responsible that he did nothing to correct the consul's misconduct and punish the consul the way it should." (*Id.*). Politis alleges that Bakoyanni, the Greek Foreign Affairs Minister, should be responsible for her staff misconduct because "as a head of the state department [she] took no action in [Politis's] complaint." (*Id.* at 6).

Under 28 U.S.C. § 1251(b)(1), "[t]he Supreme Court shall have original but not exclusive jurisdiction of [a]ll actions or proceedings to which ambassadors, other public ministers, consuls, or vice consuls of foreign states are parties[.]" This section addresses only the Supreme Court's original jurisdiction; "[i]t does not, by implication, confer subject matter jurisdiction on a federal district court." *In Re B-727 Aircraft Serial No. 21010, etc., et al*, 272 F.3d 264, 272 (5th Cir. 2001) (citing *Ohio v. Wyandotte Chems. Corp.*, 401 U.S. 493, 499 n. 3, 91 S.Ct. 1005, 28 L.Ed.2d 256 (1971) (noting that § 1251(b) did not confer jurisdiction on district courts and stating that another statute must provide the basis for jurisdiction in such cases)). Politis cannot rely on 28 U.S.C. § 1251 to provide this court with subject-matter jurisdiction over his claims.

11

Although 28 U.S.C. § 1351 grants district courts jurisdiction over suits against consuls of foreign states and "members of a [diplomatic] mission," Konstadinou and Bakoyanni are not consuls and Politis's complaint does not allege that either defendant was part of a diplomatic mission to the United States. Konstadinou and Bakoyanni are officers of the Greek government who reside in Greece.

The lack of federal-question jurisdiction is clear on the face of this case. Federal question jurisdiction arises when a plaintiff sets forth allegations "founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(b); *See also* 28 U.S.C. § 1331; *Hart v. Bayer Corp.*, 199 F.3d 239, 243 (5th Cir. 2000). Whether a case supports federal question jurisdiction is determined by the well-pleaded complaint rule. *Hart*, 199 F.3d at 243 (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152-53, 29 S.Ct. 42, 53 L.Ed. 126 (1908)). If, on its face, the plaintiff's complaint raises no issue of federal law, federal-question jurisdiction is lacking. *Id.* (citing *Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Politis asserts that the defendants' actions deprived him of liberty and due process "based on United States Constitution 5th and 14th Amendment." (Docket Entry No. 1, at 6). The Fifth Amendment protects only against action by the United States federal government, and the Fourteenth Amendment protects only against action by a state of the United States. A foreign government official is not subject to these provisions. *See Autry v. Hyde*, 19 U.S.C.M.A. 433, 436, 42 C.M.R. 35, 38 (1970) ("[T]he provisions of the Constitution of the United States are not binding upon . . . (foreign) officials in the performance of their

12

respective functions as defined by the laws" of their country.).

The parties in this case are not diverse. Diversity jurisdiction requires complete diversity of citizenship and an amount in controversy that exceeds $75,000. 28 U.S.C. § 1332(a). The diversity statute, 28 U.S.C. § 1332(a) requires complete diversity among the parties. Every plaintiff must be diverse from every defendant. Federal courts do not possess subject matter jurisdiction over lawsuits between aliens even if nonalien parties are also present. *See IIT v. Vencap, Ltd.,* 519 F.2d 1001, 1015 (2d Cir. 1975)(holding that diversity jurisdiction is defeated by "presence of aliens both as plaintiffs and as defendants" ); *Ex Parte Edelstein,* 30 F.2d 636, 638 (2d Cir.)(Hand, J.)("an alien may not sue an alien in federal court" ), *cert. denied,* 279 U.S. 851, 49 S.Ct. 347, 73 L.Ed. 994 (1929). For the purpose of determining diversity, a person' current residence is assumed to be his domicile until proven otherwise. 13B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3612 (2d ed. 1984); *id.* § 3611 (discussing domicile as the benchmark in determining diversity).

Politis's complaint shows that Gavriil resides in Algeria, while Konstadinou and Bakoyanni reside in Greece. Because Politis is domiciled in Greece, complete diversity of citizenship is not present in this case. This court lacks subject-matter jurisdiction over the suit against Konstadinou and Bakoyanni.

With respect to his claims against the Greek Consulate, Politis alleges that after he was deported to Greece, he asked the Greek Consulate in Houston obtain his and his wife's Texas driver's license records from the Department of Public Safety so that they could obtain

driver's licenses in Greece. Politis asserts that the Greek Consulate never sent him the report even though "the DPS send report about their license long time ago." (*Id.* at 5). He asserts that the Greek Consulate has "tried not to send the papers on time so plaintiff's wife loose her licenses" as a form of "retaliation for plaintiff's action against them." (*Id.*).

To the extent that Politis seeks to recover from the Consulate of Greece, as opposed to the individual consular officials, this court lacks subject-matter jurisdiction. While the immunity of consular officials is determined by the Vienna Convention, disputes with a foreign consulate are governed by the Foreign Sovereign Immunities Act (FSIA). *Joseph*, 830 F.2d at 1027-28. The FSIA confers on the district courts subject-matter jurisdiction over nonjury civil actions against foreign states to the extent they are not entitled to immunity. 28 U.S.C. § 1330(a). The Act contains a number of exceptions to the sovereign immunity of foreign nations. Politis's complaint sounds generally in tort. The possible exception to Greek sovereign immunity is 28 U.S.C. § 1605(a)(5), which creates an exception for certain tort claims but excludes from the exception any claims based on "the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused. . . ." *Id.* The activities of the Greek Consulate Politis alleges involved discretionary functions. Politis's complaint fails to allege a claim against the Greek Consulate that comes within an exception to the sovereign immunity of Greece.

**IV.    Conclusion**

Politis's claims against Gavriil must be dismissed because Gavriil is entitled to

14

consular immunity. The claims against Konstadinou, Bakoyanni, and the Consulate of Greece must be dismissed for lack of subject-matter jurisdiction.

Politis has moved for moved service on the defendants by United States Marshals and to waive the pre-trial conference, which was set for January 30, 2009. These motions are denied as moot.

This case is dismissed by separate order.

SIGNED on November 19, 2008, at Houston, Texas.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Lee H. Rosenthal
United States District Judge